UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC VIRRUETA,<br><br>Defendant. | 1:22-CR-10037-CBK<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS |

In this possession and drug distribution case, Eric Virrueta (Virrueta) moves to suppress all evidence gathered in an automobile search conducted during a traffic stop. He claims the stop was illegal from its inception and that its duration and integrated vehicle search violated his Fourth Amendment rights. Because the responding officer had probable cause to stop the vehicle, accumulated additional grounds to suspect criminality after contacting Virrueta, and parole conditions supplied an independent basis for the search, the Court recommends that the suppression motion be denied.

1

# BACKGROUND

On June 12, 2022, Watertown Police Detective Taylor Martens (Martens) observed a male and a female of known drug involvement trying to send a money order at a local Walgreens.[1] At that time, Martens did not know who the male was, but contacted Corporal Ryan Fischer (Fischer) nonetheless about his observation and suspicions.[2] Fischer, himself formerly a drug detective for the same police department, drove to the Walgreens and searched for the female's vehicle.[3] Not finding it there, Fischer went to the female's apartment complex and saw her white Cadillac and a red Pontiac Grand Prix parked in front of her apartment door.[4] While driving through the complex's parking lot, Fischer noted the Grand Prix's license plate and saw the female and a Hispanic male, shorter in build and with long hair, walking together into her apartment.[5]

Corporal Fischer's license plate check revealed that the Grand Prix belonged to another female with the last name of Virrueta (later found to be Virrueta's mother).[6] Fischer looked for that name in the Watertown police database and found a booking

---

[1] Mot. Hr'g Tr. 12-13, 27 (Feb. 15, 2023).

[2] *Id.* at 13.

[3] *Id.* at 13, 26, 28.

[4] *Id.* at 13, 27.

[5] *Id.* at 13-14, 30-31.

[6] *Id.* at 13-14; Mot. Hr'g Ex. 1 09:44-09:58, 14:00-14:30 (Feb. 15, 2023).

photo and physical description for Virrueta that matched Fischer's observations of the Hispanic male walking into the apartment.[7] Fischer sent the photo to Martens, who confirmed that the person depicted in it was the same male he saw at Walgreens.[8] Another check revealed that Virrueta did not have a valid driver's license and that he was on state parole for distribution of a controlled substance.[9]

After Corporal Fischer left the parking lot, he pulled into a nearby gravel drive west of the apartment building and waited.[10] Not more than an hour later, the white Cadillac, followed by the red Grand Prix, drove past him.[11] Fischer identified Virrueta as the driver of the Grand Prix, and knowing he was an unlicensed driver, followed Virrueta for a few blocks.[12] Fischer activated his emergency lights, and – as Virrueta drove on – his siren as well, to initiate a traffic stop.[13]

---

[7] Mot. Hr'g Tr. 14.

[8] *Id.*

[9] *Id.* at 14-15, 34; Docket Nos. 5 at 4 and 44.

[10] Mot. Hr'g Tr. 15, 31-32.

[11] *Id.* at 15-16, 32.

[12] *Id.* at 16, 31-32.

[13] *Id.* at 16, 34.

Corporal Fischer approached the sedan, greeted Virrueta by his first name, and informed him the stop was because he did not have a driver's license.[14]  Immediately, Fischer smelled a strong odor of raw marijuana emanating inside the vehicle.[15]  Virrueta provided Fischer with an expired insurance card.[16]  Seeing that the insurance on the vehicle had lapsed, Fischer requested Virrueta to come back to the patrol car.  Before heading that way, Virrueta turned the engine off, rolled up a window, and locked the doors to the Grand Prix.[17]  During the walk back, Fischer noticed Virrueta was carrying something and asked what it was.  Virrueta responded, "Oh, that's just cologne."[18]

Virrueta stepped into the patrol car but left his door open.[19]  Corporal Fischer directed him to shut the door.[20]  When asked about the marijuana odor, Virrueta claimed the smell came from him smoking marijuana about an hour before the stop.[21]  Fischer then got out of the car, approached Virrueta on the passenger side, and sought consent

---

[14] *Id.* at 16, 33; Mot. Hr'g Ex. 1 at 00:58-01:10.

[15] Mot. Hr'g Tr. 16-19; Mot. Hr'g Ex. 1 at 04:28-04:52.

[16] Mot. Hr'g Ex. 1 at 01:20-01:37.

[17] Mot. Hr'g Tr. 16-18; Mot. Hr'g Ex. 1 at 01:40-01:53.

[18] Mot. Hr'g Ex. 1 at 01:54-02:02.

[19] Mot. Hr'g Tr. 18; Mot. Hr'g Ex. 1 at 02:03-02:21.

[20] Mot. Hr'g Tr. 18; Mot. Hr'g Ex. 1 at 02:16-02:21.

[21] Mot. Hr'g Tr. 18, 36, 41-42; Mot. Hr'g Ex. 1 at 04:28-05:01.

from him to search the Grand Prix.[22] Explaining that the vehicle was his mother's, Virrueta denied him permission.[23] Fischer conducted a pat-down search and moved Virrueta to the back seat of the patrol car.[24]

At that point, another officer arrived on the scene and Corporal Fischer placed a call to brief Virrueta's parole agent, Kayla Oelkers, on the situation.[25] Oelkers recognized that Virrueta violated multiple terms of his parole, including his presence in Watertown (Virrueta agreed not to leave Sioux Falls), driving without a license, and using drugs.[26] Based on one of the agreed upon parole conditions, Oelkers instructed Fischer to search Virrueta's person and vehicle.[27] The two officers then searched the Grand Prix and discovered a bag on the floorboard of the driver's seat containing about five ounces of methamphetamine, 16 grams of marijuana, $3,000 in cash, and a digital scale.[28]

---

[22] Mot. Hr'g Ex. 1 at 09:25-09:40.

[23] *Id.* at 09:35-09:52.

[24] Mot. Hr'g Tr. 20-21; Mot. Hr'g Ex. 1 at 10:02-10:36.

[25] Mot. Hr'g Tr. 19; Mot. Hr'g Ex. 1 at 11:10-11:25.

[26] Mot. Hr'g Tr. 19, 47-49.

[27] *Id.* at 19-20; 48-49, 51.

[28] *Id.* at 20; Docket Nos. 24 at 6 and 39 at 3.

Afterward, Fischer arrested Virrueta and took him to the Codington County Jail.[29] Authorities there held Virrueta on state charges and as a parole violator.[30]

Three months later, a federal grand jury indicted Virrueta, charging him with possessing, with intent to distribute, 50 grams or more of a mixture or substance containing methamphetamine.[31] Virrueta subsequently moved to suppress the evidence seized from the Grand Prix and any statements he made after the stop and his arrest.[32] The Court held an evidentiary hearing on the motion, heard testimony from Corporal Fischer and Parole Agent Oelkers, and received 15 exhibits into evidence.[33]

## DISCUSSION

### A. Stop

Virrueta challenges the lawfulness of his traffic stop.[34] He maintains that there was no reasonable suspicion or probable cause to stop the Grand Prix and, given the time of day and tinted windows, argues that Corporal Fischer could not have identified him

---

[29] Mot. Hr'g Tr. 21, 50, 52-53.

[30] *Id.* at 53-54; Mot. Hr'g Exs. 3, 4, B, G.

[31] Docket No. 1.

[32] Docket Nos. 23, 24.

[33] Docket No. 52.

[34] Docket No. 24 at 7-8.

as the driver of the vehicle.[35] Because the stop lacked the foundation necessary to support it, Virrueta says, he was wrongfully seized in violation of the Fourth Amendment.[36]

The stop of a motor vehicle is a "seizure" of its occupants that must be conducted in accordance with the Fourth Amendment.[37] A traffic stop is legal and comports with this Amendment if it is supported by probable cause to believe that a violation of law has occurred.[38] An officer has probable cause to stop a vehicle when he observes any minor traffic violation.[39] Not having a valid license is one such violation and is reason enough to pull a driver over.[40]

A traffic stop can also be justified by a lesser showing of "reasonable suspicion" under the *Terry*[41] standard.[42] Officers making a *Terry* stop "must be able to articulate

---

[35] *Id.*

[36] *Id.* at 8.

[37] *See Brendlin v. California*, 551 U.S. 249, 255-59 (2007).

[38] *See Whren v. United States*, 517 U.S. 806, 810 (1996).

[39] *See United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007); *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc).

[40] *See United States v. Caldwell*, 97 F.3d 1063, 1067 (8th Cir. 1996); *United States v. Brown*, No. 1:15CR63RLW, 2016 WL 3043958, at *2 (E.D. Mo. May 26, 2016), *aff'd*, 710 F. App'x 722 (8th Cir. 2018).

[41] *Terry v. Ohio*, 392 U.S. 1 (1968).

[42] *See Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014); *United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007).

something more than a 'inchoate and unparticularized suspicion' or 'hunch.'"[43] The Fourth Amendment requires some minimal level of "objective justification" for making the stop.[44] Probable cause means "'a fair probability that contraband or evidence of a crime will be found,' and the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause."[45] Under *Terry*, officers must simply have "a 'particularized and objective basis' for suspecting criminal activity at the time the stop is made."[46]

"Reasonable suspicion, like probable cause, is dependent upon the content of information possessed by [officers] and its degree of reliability. Both factors – quantity and quality – are considered in the 'totality of the circumstances – the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion."[47] If the stop is not supported by reasonable suspicion or if officers exceed the proper scope of the stop, then any evidence derived from it must be excluded from trial.[48]

---

[43] *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (*quoting Terry,* 392 U.S. at 27).

[44] *INS v. Delgado*, 466 U.S. 210, 217 (1984).

[45] *Sokolow*, 490 U.S. at 7 (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[46] *United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2002).

[47] *Alabama v. White*, 496 U.S. 325, 330 (1990) (*quoting United States v. Cortez*, 449 U.S. 411, 417 (1981)).

[48] *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001).

The totality of the circumstances prove Corporal Fischer had sufficient and reliable information to justify the traffic stop. Fischer independently identified Virrueta by comparing his booking photo and physical description to the man he saw exit the Grand Prix and walk into the suspicious female's apartment.[49] That the registered owner of the Grand Prix (Virrueta's mother) had his same last name supported the probability that he was the unknown male Fischer had earlier seen.[50] When paired with knowledge that Virrueta had no driver's license,[51] these revealing clues justified stopping Virrueta even if he committed no other traffic infractions.

Virrueta also disputes that Corporal Fischer could sufficiently identify him driving the Grand Prix as Fischer waited on the gravel drive.[52] At the time of the traffic stop (June 12 at about 9:38 p.m.), it was dusk out but not completely dark.[53] Fischer testified that he did not remember whether his headlights were on, but his location (near the intersection of 3rd Avenue SW and 18th Street SW) allowed him to see drivers as they slowed down

---

[49] Mot. Hr'g Tr. 14.

[50] *See id.*

[51] *Id.* at 15; *see also* SDCL § 32-12-22 ("No person . . . may drive any motor vehicle upon a highway in this state unless the person has a valid driver license[.]").

[52] Docket No. 24 at 7-8.

[53] *See id.* at 33; Mot. Hr'g Ex. 1 at 00:00-01:00 (showing a lighter blue sky and conditions bright enough to drive without headlights but approaching darkness).

to turn in front of him.[54] It was then that Fischer recognized Virrueta as the driver of the Grand Prix, consistent with his predictions and prior observations.[55]

Virrueta further disputed that the tinted windows on the car could have allowed Corporal Fischer to see him as the driver.[56] But Fischer's body camera footage shows that the windows were transparent enough for him to have made out the driver from that distance.[57] Fischer had both probable cause and reasonable suspicion to initiate the traffic stop.

### B. Vehicle Search

Virrueta next contends that the search of the Grand Prix must be suppressed.[58] He maintains that the mission of the traffic stop ended when he was cited for the traffic violations, and that Corporal Fischer lacked the reasonable suspicion to extend the stop when he searched the car.[59] In kind, he argues that Fischer lacked probable cause to search the vehicle, without consent or a warrant, under the automobile exception.[60] And

---

[54] *See* Mot. Hr'g Ex. A; Mot. Hr'g Tr. 32-33.

[55] Mot. Hr'g Tr. 15-16, 33.

[56] Docket No. 24 at 7.

[57] *See* Mot. Hr'g Ex. 1 at 00:55-01:05.

[58] Docket No. 24 at 8-11.

[59] *Id.* at 8-9.

[60] *Id.* at 9-10.

10

he disputes that the conditions of his parole could have independently authorized the search.[61]

### 1. Extension

A stop premised only on an observed traffic violation becomes unlawful when drawn out longer than reasonably necessary "to complete the mission" of issuing the ticket.[62] The mission typically includes "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," as necessary to ensure that "vehicles on the road are operating safely and responsibly."[63] Certain inquiries unrelated to the violation are permitted so long as they do not prolong the stop.[64] Once the violation is addressed, or reasonably should have been addressed, the stop and inquiries must terminate.[65] The stop, however, may be extended beyond its original "mission" when the officer has reasonable suspicion of other criminal activity afoot.[66]

---

[61] *Id.* at 10-11.

[62] *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

[63] *Rodriguez v. United States*, 575 U.S. 348, 355 (2015).

[64] *Id.*

[65] *Id.* at 354.

[66] *United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019) (citing *United States v. Riley*, 684 F.3d 758, 763, 765 (8th Cir. 2012)).

The facts Fischer described establish reasonable suspicion of illegal drug activity. First, Fischer spotted Virrueta associating and convoying with a female that law enforcement knew to be involved with drugs.[67] Fischer smelled raw marijuana when he approached the Grand Prix, and then watched Virrueta roll up the window and lock the vehicle when the two of them returned to Fischer's car.[68] Fischer mentioned the cologne bottle Virrueta toted to the patrol car.[69] Virrueta also tried to vent more air into the car by leaving his door open, prompting Fischer to tell Virrueta to close the door.[70] Fischer discussed the marijuana scent coming from the Grand Prix and Virrueta's person while the two were in the patrol car together, and Virrueta admitted to smoking about an hour before the stop.[71] Virrueta's conduct and admissions suggested criminal activity distinct from his driving infractions.[72]

After completing the traffic citations, Corporal Fischer asked to search the Grand Prix but Virrueta would not consent.[73] Fischer moved Virrueta to the back of the patrol

---

[67] Mot. Hr'g Tr. 12-14, 29, 40.

[68] Mot. Hr'g Ex. 1 at 01:44-01:53; Mot. Hr'g Tr. 16, 18.

[69] Mot. Hr'g Ex. 1 at 01:53-02:02; Mot. Hr'g Tr. 17.

[70] Mot. Hr'g Ex. 1 at 02:10-02:20; Mot. Hr'g Tr. 18.

[71] Mot. Hr'g Ex. 1 at 04:29-05:00; Mot. Hr'g Tr. 18.

[72] *Id.* at 17.

[73] Mot. Hr'g Ex. 1 at 09:27-09:55; Mot. Hr'g Tr. 19.

car, called Parole Agent Oelkers, and then searched the vehicle anyway.[74] While it is true that Fischer's investigatory actions after issuing the citation lengthened the stop, Virrueta's unusual behavior, the smell of marijuana on his person and in the vehicle, and his immediate association with a known drug handler made him suspicious. An extension of the stop, beyond the time needed to issue no driver's license and insurance citations, was therefore permissible.

### 2. Automobile Exception

Virrueta claims that the same facts did not constitute probable cause of illegal drug activity. He says that since Corporal Fischer considered it necessary to call Parole Agent Oelkers, and did not "state he was conducting his own probable cause search" before making the call, the search of the car was illegal.[75]

During a lawful traffic stop, a warrantless automobile search is permissible when there is probable cause to believe that a vehicle contains contraband or evidence of a crime.[76] An officer with probable cause to search a vehicle may search every part of the

---

[74] Mot. Hr'g Ex. 1 at 09:56-10:40; Mot. Hr'g Tr. 18-20.

[75] Docket No. 24 at 9.

[76] *Carroll v. United States*, 267 U.S. 132, 149 (1925); *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020).

vehicle and its contents, including items belonging to the driver, a passenger, or someone else.[77]

Corporal Fischer had probable cause to search the Grand Prix under the automobile exception. Virrueta's associations, conduct, and statements along with the formidable raw marijuana odor provided ample evidence of probable cause to conduct a warrantless search of the vehicle and seize contraband from the interior of it.[78]

Contrary to what Virrueta maintains, Corporal Fischer's communication with Parole Agent Oelkers did not amount to an "acknowledgement that [Fischer] had no probable cause to search the car."[79] Nor did Fischer's commentary about conducting a "parole search" vitiate the existence of the probable cause he already had. As discussed below, Fischer's search was authorized under the parole terms. His observations and

---

[77] *See Wyoming v. Houghton*, 526 U.S. 295, 300-07 (1999); *United States v. Ross*, 456 U.S. 798, 823-25 (1982).

[78] *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) (odor of marijuana provides probable cause for warrantless search of vehicle under automobile exception); *United States v. Mayfield*, 678 F. App'x 437, 439 (8th Cir. 2017) (per curiam) (probable cause to search based on smell of marijuana emanating from vehicle and officer's credible testimony); *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) ("distinct odor" of marijuana and defendant's admission to smoking it gave deputies probable cause to search vehicle under automobile exception); *United States v. Caves*, 890 F.2d 87, 90-91 (8th Cir. 1989) (marijuana odor, when considered in context of other circumstances present, was sufficient to establish probable cause for search of car).

[79] Docket No. 24 at 9.

discussions with Virrueta separately furnished Fischer with the requisite probable cause to justify a warrantless vehicle search.

### 3. Parole Conditions

Virrueta contests Fischer's authority to search the Grand Prix as well under the parole agreement.[80] The Supreme Court, however, has held that *suspicionless* parolee searches do not violate the Fourth Amendment.[81] "[B]ecause parole is more akin to imprisonment[,] . . . . parolees . . . have severely diminished expectations of privacy by virtue of their status alone," and the state has an "overwhelming interest in supervising [them]" because of their increased likelihood of committing future offenses.[82] But when the terms of the parole agreement require reasonable suspicion as a condition precedent to search, an officer's non-adherence to the predetermined suspicion level contravenes the Fourth Amendment.[83]

---

[80] *Id.* at 10-11.

[81] *Samson v. California*, 547 U.S. 843, 857 (2006); *see also id.* at 855 ("[t]hat some States and the Federal Government require a level of individualized suspicion is of little relevance to our determination . . . .").

[82] *Id.* at 850, 852-53 (internal quotations omitted).

[83] *See United States v. Hamilton*, 591 F.3d 1017 (8th Cir. 2010) (noting that *Samson* permits suspicionless parole searches but analyzing the existence of reasonable suspicion when it was a condition precedent to search).

The terms of Virrueta's parole – one of which required that he submit to reasonable suspicion searches – were reviewed (likely twice) with him.[84] In fact, Virrueta's assent to these terms was the only reason he was not still in state prison; he could not have been on parole without consenting to them.[85] When he signed the form setting forth the terms, Virrueta agreed that he was subject to a search of his "person, property, place of residence, vehicle and personal effects . . . at any time, with or without a search warrant, whenever reasonable suspicion is determined by a parole agent or law enforcement."[86] And in his phone conversation with Parole Agent Oelkers, Fischer provided ample detail to engender reasonable suspicion,[87] including that Virrueta was in Watertown, driving without a license, and using drugs in violation of his parole terms.[88] During the

---

[84] *See* Mot. Hr'g Ex. 2; Mot. Hr'g Tr. 45-47 (explaining that Virrueta went over and agreed to parole terms with Oelkers and a case manager at prison); *see also Samson* at 852 (concluding that parolee's agreement to the plain terms of parole search condition did not give parolee "an expectation of privacy that society would recognize as legitimate").

[85] Mot. Hr'g Ex. 2.

[86] *See id.* at 1, ¶ SA5; *see also United States v. Jackson*, 866 F.3d 982, 985 (8th Cir. 2017) (approving suspicionless search of parolee's property by giving weight to circumstances of parolee being on notice of release terms and his agreeing to adhere to them); *United States v. Taylor*, 4:16-CR-40068-KES, 2017 WL 1194340, at *1, 4-6 (D.S.D. Mar. 31, 2017) (finding reasonable suspicion to conduct parole search based on same search condition as Virrueta agreed to).

[87] *See Taylor*, 2017 WL 1194340, at *4-5 (validating reasonable suspicion search of parolee's home, based on tip that he had guns and drugs in home, threatened the tipster, and lied about living situation).

[88] Mot. Hr'g Tr. 47.

conversation, Oelkers asked Fischer "to search whatever was in [Virrueta's] possession."[89]

Virrueta primarily challenges the parole-based car search on ownership grounds, pointing out that the Grand Prix was his mother's vehicle, not his.[90] Courts have though upheld searches of vehicles not owned by the parolee but in the parolee's control.[91] Further, the notion that Virrueta himself must own the vehicle for it to be subject to search contradicts Parole Agent Oelker's testimony—that the search condition applies to any property in the parolee's immediate reach or possession.[92]

Virrueta's upfront and express consent to have his person, property, and possessions searched at any time nullifies his search and seizure claim. Parole is a privilege, not a right, and without agreeing to the rules Virrueta would not have been released.[93] Given Virrueta's suspicious activity and voluntary consent to the terms of his parole, the search of the Grand Prix, and seizure of items from it, were lawful.

---

[89] *Id.* at 49, 51.

[90] Docket No. 24 at 10.

[91] *See United States v. Price*, 28 F.4th 739, 753-54 (7th Cir. 2022) (upholding parole-based vehicle search even though vehicle owned by parolee's girlfriend); *see also United States v. Rodriquez*, 829 F.3d 960, 961-62 (8th Cir. 2016) (affirming warrantless search of probationer's vehicle based on reasonable suspicion that he was engaging in criminal activity or violating probation).

[92] Mot. Hr'g Tr. 51-52.

[93] Mot. Hr'g Tr. 49

## C. Tainted Fruit

Virrueta lastly contends that the evidence and statements obtained from him were the tainted fruit of a poisonous tree and should be suppressed under the Exclusionary Rule.[94] The contention though depends on there being encroachments of the Fourth Amendment incident to his stop and detention. But because Fischer and his sidekick did not skirt the Amendment or overstep their bounds, there is no poisonous tree for any tainted fruit to grow or fall from.[95] It follows then that the evidence seized and the statements Virrueta made, after the stop, can be used at trial, whether he testifies or not.

## CONCLUSION

Corporal Fischer had probable cause and reasonable suspicion to stop Virrueta in the Grand Prix. Given the suspicious nature of what Virrueta said and did and the strong marijuana odor, Fischer did not impermissibly expand the traffic stop by contacting Parole Agent Oelkers and conducting a warrantless search of the car. Fischer accumulated sufficient evidence of illegal drug activity to justify a probable cause search, without a warrant or consent, under the automobile exception. The terms of Virrueta's parole, which he agreed to, provided a second and independent basis for the vehicle

---

[94] Docket No. 24 at 10-11.

[95] *See United States v. Rutledge*, No. 22-1708, 2023 WL 2339487, at *4 (8th Cir. Mar 3, 2023); *United States v. Spaid*, 3:16-CR-30176-RAL, 2017 WL 9292373, at *9 (D.S.D. Sept 20, 2017), *R&R adopted*, 2017 WL 4863080 (D.S.D. Oct. 22, 2017).

search. And because probable cause existed to support the stop, search, and arrest, there is no tainted fruit to exclude. The law, as applied to Virrueta's case, foils his ability to suppress the evidence the government has, and stands ready to use, against him at trial.

## RECOMMENDATION

In accordance with the authorities and legal analysis set forth in this report, and the record now before the Court, it is

RECOMMENDED that Virrueta's Motion to Suppress Evidence[96] be denied.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to object to the same.[97] Unless an extension of time for cause is later obtained,[98] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[99] Objections must "identify[] those issues on which further review is desired[.]"[100]

---

[96] *See* Docket No. 23.

[97] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[98] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[99]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[100]*Arn*, 474 U.S. at 155.

DATED this 10th day of March 2023.

BY THE COURT:

_____
**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**